```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
CHRISTOPHER A. VINAS, CPA, AND                  :
VINAS & CO., CPA'S, P.C.,                       :
                                                :
                         Plaintiffs,            :
                                                :   06 Civ. 10233 (HB)
         - against -                            :
                                                :   OPINION & ORDER
THE CHUBB CORPORATION, CHUBB GROUP              :
OF INSURANCE COMPANIES, and                     :
FEDERAL INSURANCE COMPANY,                      :
                                                :
                         Defendants.            :
------------------------------------------------------------------x
```

**Hon. HAROLD BAER, JR., District Judge:[1]**

Plaintiffs Christopher A. Vinas and his accounting firm, Vinas & Co. (collectively, "Plaintiffs" or "Vinas") bring claims against Defendants The Chubb Corporation and related entities Chubb Group of Insurance Companies and Federal Insurance Company (collectively, "Defendants" or "Chubb") for tortious interference with contract, tortious interference with prospective business advantage, and defamation, all under New York law. The case is here on diversity grounds. Chubb moves to dismiss Vinas' complaint in its entirety pursuant to F.R.C.P. 12(b)(6).

For the reasons articulated below, Chubb's motion to dismiss is denied in part and granted in part.

## I.     BACKGROUND

A.  Underlying Facts of Complaint

The following facts are alleged in Plaintiff's complaint and are taken as true for the purposes of a motion to dismiss. See, e.g., Bolt Elec., Inc. v. City of New York, 53 F.3d 465, 469 (2d Cir. 1995).

Plaintiff Christopher Vinas is a certified public accountant. Plaintiffs' First Amended Complaint, January 23, 2007 ("Am. Compl.") ¶ 2. Vinas is the sole shareholder

---
[1] The Court wishes to thank Shaun Pappas of Cardozo Law School for his assistance researching this opinion.

and CEO of Vinas & Co., a small accounting company that has generally employed between one and three people during its existence. Am. Compl. ¶¶ 3, 88.

For the fifteen years prior to the events giving rise to this lawsuit, Vinas & Co. was the only accountant for non-party Angeliades, which has had significant growth over those years and is now a large, successful construction company. Am. Compl. ¶¶ 43, 46. Indeed, Mr. Vinas and Mike Angeliades (Angeliades' CEO) had a "friendship." Am. Compl. ¶ 124. By mid-2005, Angeliades' construction company was the major source of income for Vinas & Co. Am. Compl. ¶ 61.

Angeliades, as a regular course of business, procured surety bonds so as to secure contracts to do its construction work. Am. Compl. ¶ 49. Angeliades would procure surety bonds through its surety bond broker, Peter Duffy ("Duffy"). Am. Compl. ¶ 61, 81. Over the fifteen years prior to the Complaint, Angeliades bought surety bonds from at least five different surety companies. Am. Compl. ¶ 50.

Defendant Chubb is a large insurance corporation that, among other services, provides surety bonds. Am. Compl. ¶¶ 12-13. According to Plaintiffs, Chubb wields great influence in the field, as Chubb provides surety bonds to 78 of America's 400 largest construction companies. Am. Compl. ¶¶ 14-16. According to Plaintiffs, Chubb relies on the integrity and accuracy of a construction company's financial statements when it makes its decision to issue a surety bond. Am. Compl. ¶¶ 52-53.

In mid-2005, Angeliades purchased a surety bond from Chubb for the first time. Am. Compl. ¶ 61. Sometime after mid-2005, Chubb became the sole surety company from which Angeliades purchased his surety bonds. Am. Compl. ¶ 64. On or about September 9, 2005, Chubb's representative Michael Fleming ("Fleming") telephoned Angeliades' surety bond broker, Duffy, and allegedly told him that Vinas was "too small" and "no good" to do accounting work for Angeliades, and should be replaced.[2] Am. Compl. ¶ 83. Duffy conveyed these comments to Angeliades. Am. Compl. ¶84. Nevertheless, in early 2006, Angeliades and Vinas contracted for Vinas to prepare Angeliades' 2006 audited financial statements and tax returns. Am. Compl. ¶ 57. Plaintiff alleges that Chubb was aware of their contract, aware that Angeliades was the

---

[2] Fleming followed up his phone conversation with Duffy with a fax outlining Chubb's requirements for the issuance of surety bonds to Angeliades. Am. Compl. ¶ 85.

major source of income to Vinas, and generally aware of the consequences that might befall Vinas were Vinas to lose the Angeliades contract. <u>See</u>, <u>e.g.</u>, Am. Compl. ¶ 57, 75, 98, 115.

On or about April 4, 2006, Fleming repeated the same statements to Duffy that Vinas was "too small" and "no good" to do accounting work for Angeliades, and should be replaced. Am. Compl. ¶ 83. Duffy again conveyed the statements to Angeliades. <u>Id</u>. at ¶ 84. On or about August 4, 2006, at a meeting between Angeliades employees and Chubb employees, Fleming repeated the same statements, in the presence of Mr. Angeliades and other Angeliades employees. Am. Compl. ¶ 86.

At some point after this meeting, according to Plaintiff, Chubb threatened to stop providing Angeliades with surety bonds if Angeliades did not replace Vinas as his accountant. Am. Compl. ¶ 67. In September 2006, Chubb indeed refused to provide a surety bond to Angeliades, and thus prevented Angeliades from making a $100 million bid on a construction contract. Am. Compl. ¶ 69.

In November 2006, Angeliades fired Vinas as his accountant and thus breached Vinas' contract to prepare Angeliades' 2006 audited financial statements and tax returns. Am. Compl. ¶ 66.[3] Subsequently, Vinas not only lost Angeliades, but two other longtime construction clients as well. Am. Compl. ¶ 116.

B. <u>Plaintiffs' Complaint</u>

Plaintiffs' Amended Complaint, filed on January 24, 2007, asserts three causes of action against Defendants.[4]

First, Vinas alleges that Chubb tortiously interfered with Vinas' contract to perform Angeliades' 2006 financials and tax returns. Vinas seeks $98,000 in consequential damages, and punitive damages. Am. Compl. ¶¶ 74-75.

---

[3] It can be inferred, although it is not entirely made clear in the Complaint, that Angeliades did replace Vinas with an accountant more to Chubb's liking. Am. Compl. ¶ 71.

[4] Plaintiffs originally filed this lawsuit in New York state court on September 29, 2006. Defendants removed to federal court on October 23, 2006.

Neither side contests that jurisdiction exists pursuant to the general federal diversity statute, 28 U.S.C. § 1332. According to Plaintiffs, Plaintiff Christopher Vinas is a New York resident and Vinas & Co. is a New York corporation. Am. Compl. ¶¶ 2-3. According to Plaintiffs, Defendant The Chubb Corporation is a New Jersey corporation; the Chubb Group of Insurance Companies is apparently a New Jersey corporation; and Federal Insurance Company is an Indiana corporation with its principal place of business in New Jersey. Am. Compl. ¶ 4-6.

Secondly, Vinas alleges that Chubb tortiously interfered with its prospective economic advantage, i.e. its future contracts with Angeliades and the two other construction companies who discontinued their business with Vinas. Vinas seeks $450,000 in damages for the loss of its 2007 business; millions of dollars for the loss of prospective business, loss of reputation, and mental pain and suffering over the coming ten to twenty years; and punitive damages. Am. Compl. at 35.

Lastly, Vinas alleges that Chubb committed defamation when Chubb stated that Vinas was "too small" and "no good" to do accounting work for Angeliades. Vinas, as above, seeks $98,000 in consequential damages, $450,000 in damages for the loss of its 2007 business; millions of dollars for the loss of prospective business, loss of reputation, and mental pain and suffering over the coming ten to twenty years; and punitive damages. Am. Compl. at 34.

## II.   STANDARD OF REVIEW

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the movant must establish that the plaintiff has failed to "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In ruling on a Rule 12(b)(6) motion, this Court must construe all factual allegations in the complaint in favor of the non-moving party. See Krimstock v. Kelly, 306 F.3d 40, 47-48 (2d Cir. 2002). A motion to dismiss should not be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Shakur v. Selsky, 391 F.3d 106, 112 (2d Cir. 2004), quoting McEachin v. McGuinnis, 357 F.3d 197, 200 (2d Cir. 2004).

## III.   DISCUSSION

I will address Vinas' three claims – tortious interference with contract, tortious interference with prospective business advantage, and defamation – in turn. The parties do not dispute that New York law applies to all three claims. See, e.g., American Protein Corp. v. AB Volvo, 844 F.2d 56, 62 (2d Cir. 1988) (holding that New York law applies to tortious interference claim where alleged tort occurred in New York and involved New York corporation).

4

A. <u>Tortious Interference with Contract Claim</u>

Under New York law, the elements of a tortious interference with contract claim are: "(a) that a valid contract exists; (b) that a 'third party' had knowledge of the contract; (c) that the third party intentionally and improperly procured the breach of the contract; and (d) that the breach resulted in damage to the plaintiff." <u>Albert v. Loksen</u>, 239 F.3d 256, 274 (2d Cir. 2001), <u>citing</u> <u>Finley v. Giacobbe</u>, 79 F.3d 1285, 1294 (2d Cir. 1996). Where the third party has an "economic interest" in the contract, however, a plaintiff must make a higher showing – i.e., that the third party's interference was "either malicious or involved conduct rising to the level of criminality or fraud." <u>Masefield AG v. Colonial Oil Indus.</u>, 2006 U.S. Dist. LEXIS 5792, at *15-16 (S.D.N.Y. 2006) ("<u>Masefield</u>") (collecting cases).

This "economic interest" defense, as articulated recently by the New York Court of Appeals, applies to a third party that "act[s] to protect its own legal or financial stake in the breaching party's business." <u>White Plains Coat & Apron Co., Inc. v. Cintas Corp.</u>, 8 N.Y.3d 422, 2007 N.Y. LEXIS 847, at *5 (N.Y. Apr. 26, 2007) ("<u>White Plains Coat</u>").[5] Accordingly, the "economic interest" defense has been applied in situations "where defendants were significant stockholders in the breaching party's business;[6] where defendant and the breaching party had a parent-subsidiary relationship;[7] where defendant was the breaching party's creditor;[8] and where the defendant had a managerial contract with the breaching party at the time defendant induced the breach of contract with plaintiff."[9] <u>White Plains Coat</u>, 2007 N.Y. LEXIS 847, at *5-6.

Here, Vinas' tortious interference claim turns on whether Chubb may successfully assert the "economic interest" defense. The central question, which appears to be one of

---

[5] Although the Court of Appeals decided <u>White Plains Coat</u> after the parties briefed Chubb's motion to dismiss, the parties subsequently brought the decision to this Court's attention.

[6] <u>See</u> <u>White Plains Coat</u>, 2007 N.Y. LEXIS 847, at *5-6, <u>citing</u>, e.g., <u>Felsen v. Sol Cafe Mfg. Corp.</u>, 249 N.E.2d 459 (N.Y. 1969); <u>Foster v. Churchill</u>, 665 N.E.2d 153, 157 (N.Y. 1996).

[7] <u>See</u> <u>White Plains Coat</u>, at *5-6, <u>citing</u>, e.g., <u>American Protein Corp. v. AB Volvo</u>, 844 F.2d 56, 63 (2d Cir. 1988).

[8] <u>See</u> <u>White Plains Coat</u>, at *5-6, <u>citing</u> <u>Ultramar Energy Ltd. v. Chase Manhattan Bank, N.A.</u>, 179 A.D.2d 592, 592-593 (N.Y. App. Div. 1992).

[9] <u>See</u> <u>White Plains Coat</u>, at *5-6, <u>citing</u> <u>Don King Productions, Inc. v. Smith</u>, 47 Fed. Appx. 12, 15-16 (2d Cir. 2002) (unpublished) (Court upheld jury verdict that rejected tortious interference claim by plaintiff boxing promotion company against defendant boxing manager who induced boxer to breach promotion contract with plaintiff promotion company).

first impression, is whether a surety bond issuer's interest in the financial viability and integrity of the third-party construction company to which it issues surety bonds is a sufficient "legal or financial stake" in the breaching party's business to assert successfully the "economic interest" defense.

Chubb argues that it has a direct financial interest in the integrity of Angeliades' financials, and thus Angeliades' choice of accountant, because "a surety, in issuing a performance bond, undertakes the risk that the contractor will be unable to complete the project or to absorb any losses that may occur in the performance of the contract."[10] United States Fid. & Guar. Co. v. Braspetro Oil Servs. Co., 369 F.3d 34, 41 n.3 (2d Cir. 2004).[11] Before a surety issues a bond, it typically "will have undertaken a rigorous investigation of the contractor's financial condition and relevant prior experience." Id. Thus, Chubb argues, because Chubb's economic well-being is directly tied to Angeliades' financial condition, and indirectly to Angeliades' accountants who prepare reports of that financial condition, Chubb is entitled to the defense and may induce Angeliades to breach its contract with its accountant Vinas (at least if no malice, criminality, or fraud exists).

Vinas counters that courts have typically applied the "economic interest" defense in situations where defendant had a direct, existing financial stake in the breaching party, such as a shareholder or board member of a company, or a parent-subsidiary relationship, as distinguishable from the more indirect and attenuated surety bond issuer-contractor relationship in the case at bar. See White Plains Coat, 2007 N.Y. LEXIS 847, at *5-6 n.6, *6 n.7 (collecting cases). Chubb points out, however, that courts have not limited the "economic interest" defense to direct ownership situations. See Don King Productions, Inc. v. Smith, 47 Fed. Appx. 12, 15-16 (2d Cir. 2002) (unpublished) ("Such economic interest… is not limited to that of the breaching party, but can include that of the [defendants'] as well…. [Plaintiff] argues that this reasoning only applies where the defendant has an ownership interest in the breaching party. But there is nothing in

---

[10] See, e.g., Transcript of Oral Argument, May 2, 2007, at 5 (Defendant: "If the company stops paying its bills or goes belly up, the surety is going to have to pay a lot of money.").

[11] Vinas' complaint appears to support this contention. Vinas alleges that "sureties, including Chubb, based their decisions as to whether or not to issue said Surety Bonds upon the integrity and accuracy of Angeliades' audited financial statements and tax returns as prepared by the plaintiffs." Pl. Compl. ¶ 52-53.

[Felsen], or in any other cases… that suggests such a limitation."),[12] citing Felsen v. Sol Cafe Mfg. Corp., 249 N.E.2d 459; see also Masefield, 2006 U.S. Dist. LEXIS 5792, at *15 ("Although many of the cases involving the economic interest defense in the context of a tortious interference with contract claim have involved parent-subsidiary relationships, the Court is aware of no authority suggesting that the defense should be limited to that circumstance."), citing Night Hawk Ltd. v. Briarpatch Ltd., L.P., 2003 U.S. Dist. LEXIS 23179, at *6-7 (S.D.N.Y. 2003) (relationship between defendants and breaching third parties was that of competitors, not parent-subsidiary).[13]  Indeed, at least one Court has instead termed the "economic interest" defense the "self-interest exception."  See Imtrac Indus. v. Glassexport Co., 1996 U.S. Dist. LEXIS 1022, at *22 (S.D.N.Y. 1996).

Although the instant question is one of first impression, Chubb's situation is perhaps most closely analogous to that of the defendant creditor who qualified for the "economic interest" defense in Ultramar Energy Ltd. v. Chase Manhattan Bank, N.A., 179 A.D.2d 592, 592-593 (N.Y. App. Div. 1992) ("Ultramar"), cited approvingly, White Plains Coat, at *5-6.  In Ultramar, the defendant enforced a security agreement against its debtor by receiving and retaining accounts receivable owed to the debtor by other parties, thus causing debtor to breach its contract with plaintiff.  The Ultramar defendant qualified for the "economic interest" defense.  Ultramar at 593.  Still, Vinas argues that unlike Ultramar, Chubb's interest in Angeliades is not a present interest – but rather, a prospective interest that does not become an "existing legal and financial interest" until, if, and when Angeliades defaults on its surety bond.[14]

On this motion to dismiss, construing Plaintiff's alleged facts in their most favorable light, I cannot conclude as a matter of law that Chubb, by dint of its issuance of

---

[12] Although Don King Productions is unpublished, because the Court of Appeals relied upon it in articulating the contours of the "economic interest" defense under New York law, see White Plains Coat, at *5-6, I will cite it here.

[13] It should be noted that the White Plains Coat Court subsequently rejected the use of the "economic interest" defense by a defendant who was merely plaintiff's competitor.  See White Plains Coat at *7 ("A defendant who is simply plaintiff's competitor and knowingly solicits its contract customers is not economically justified in procuring the breach of contract…. [M]ere status as plaintiff's competitor is not a legal or financial stake in the breaching party's business that permits defendant's inducement of a breach of contract.").

[14] See Transcript of Oral Argument, May 2, 2007, at 28 (Plaintiff: "…[T]he fact of the matter is a surety is only something in the prospective.").

7

a surety bond to Angeliades, qualifies for the "economic interest" defense. The development of facts through discovery may serve to illuminate several aspects of the nature of the relationship between Chubb and Angeliades, such as the degree of reliance by Chubb on the quality of Angeliades' financials. Because Chubb does not, as a matter of law at this stage, qualify for the "economic interest" defense that would force Vinas to make a greater showing of malice, criminality, or fraud, Chubb's motion to dismiss Vinas' tortious interference claim is denied.[15]

        B.  Tortious Interference with Prospective Economic Advantage Claim

Vinas' second claim against Chubb is for Chubb's interference with Vinas' future contracts (i.e. Vinas' "prospective business advantage"). To state a claim, Vinas must allege that: (1) there was a business relationship with a third party; (2) defendant "knew of that relationship and intentionally interfered with it"; (3) defendant either acted "solely out of malice" or used wrongful means; and (4) defendant's "interference caused injury to the relationship" with the third party. Masefield, 2006 U.S. Dist. LEXIS 5792, at *25, citing Carvel Corp. v. Noonan, 350 F.3d 6, 17 (2d Cir. 2003).

As is evident, Vinas must make a greater showing of "malice" or "wrongful means" here, regardless of whether or not Chubb possesses an "economic interest." "Because 'greater protection is accorded an interest in an existing contract . . . than to the less substantive, more speculative interest in a prospective relationship,' courts require 'proof of more culpable conduct on the part of the interferer' to impose liability on defendants who interfere with prospective business relationships than they require to impose liability on defendants who interfere with existing contracts." Masefield, 2006 U.S. Dist. LEXIS 5792, at *25-26; see also White Plains Coat, 2007 N.Y. LEXIS 847, at *4-5.

At the outset, Chubb points out, and Vinas does not dispute, that although Vinas cites to the fact that he lost two other clients aside from Angeliades because of Chubb's actions, Vinas does not allege that Chubb knew of these other two contractual relationships. Thus, Vinas' claims regarding these two unknown clients are dismissed.

---

[15] Were Chubb to qualify for the "economic interest" defense, it is highly unlikely that Vinas' tortious interference claim would survive, as Vinas alleges no facts, aside from conclusory allegations, that support an inference of malice or "conduct rising to the level of criminality or fraud." See Section B., infra.

8

Regarding Vinas' future contracts with Angeliades, Vinas' claim that Chubb interfered with those contracts turns on whether Vinas alleges in non-conclusory fashion that Chubb acted "solely out of malice" or used "wrongful means."

Vinas does not allege, aside from conclusory allegations, that Chubb acted "solely out of malice."  Indeed, Chubb's economic motivation, even if somewhat attenuated from the Vinas-Angeliades relationship, counsels against such a finding of malice.  See, e.g., A&A Jewellers Ltd. v. Bogarz, Inc., 2005 U.S. Dist. LEXIS 33873, at *5 (W.D.N.Y. 2005) ("Actions taken, at least in part, to promote or advance [defendant's] economic self-interest are, by definition, not taken for the sole purpose of harming [plaintiff]."); Imtrac Indus. v. Glassexport Co., 1996 U.S. Dist. LEXIS 1022, at *23 (S.D.N.Y. 1996) (the "hope of economic gain" does not alone constitute malice), citing Inn Chu Trading Co. v. Sara Lee Corp., 810 F. Supp. 501, 506 (S.D.N.Y. 1992).

Vinas is thus left to argue that Chubb used "wrongful means" when it interfered with its prospective business.  To establish "wrongful means," as a general rule, "the defendant's conduct must amount to a crime or an independent tort…"  Masefield, 2006 U.S. Dist. LEXIS 5792, at *25, citing Carvel Corp. v. Noonan, 818 N.E.2d 1100, 1103 (N.Y. 2004).  Vinas notes that "wrongful means" may include "some degrees of economic pressure," if such pressure is "extreme and unfair."  Masefield at *28, citing Carvel Corp. v. Noonan, 818 N.E.2d at 1105.  It is unclear what (if any) distinction there is between "extreme and unfair" and "tortious or criminal" economic pressure.[16]  In any event, although Chubb certainly exerted some pressure upon Angeliades to drop Vinas, I cannot say that that pressure alleged by Vinas was "extreme" in a manner approaching a separate crime or tort.  See Masefield at *28 (where plaintiff claimed that defendant pressured third-party breacher to "either raise the price of the cargos… or cancel the Contract," such conduct was not "extreme and unfair," tortious, or criminal).[17]

Accordingly, Chubb's motion to dismiss Vinas' claim for tortious interference with prospective business advantage is granted.

---

[16] "It is not clear what "extreme and unfair" means, and whether economic pressure can be "extreme and unfair" without being tortious and criminal."  Masefield at *28, citing Carvel Corp. v. Noonan, 818 N.E.2d at 1105.

[17] Vinas also argues that Chubb's conduct amounts to the independent tort of defamation.  This argument is entirely derivative of Vinas' defamation claim, and fails along with it.  See Section C., infra.

C. Defamation Claim

Under New York law, Vinas must show four elements to state a claim for defamation: (1) a false and defamatory statement of fact; (2) regarding the plaintiff; (3) published to a third party by defendants; and, (4) resulting in injury to the plaintiff. See DelleFave v. Access Temporaries, Inc., 2001 WL 25745, at *3 (S.D.N.Y. 2001), citing Weldy v. Piedmont Airlines, Inc., 958 F.2d 57, 61 (2d Cir. 1993).

Vinas argues that Chubb's statements that he was "too small" and "no good" are defamatory.[18] Chubb, however, avers that these statements are opinion, not fact, and thus cannot be "false" as a matter of law. "New York law absolutely protects statements of 'pure opinion,' such that they can never be defamatory." Kirch v. Liberty Media Corp., 449 F.3d 388, 402 (2d Cir. 2006). Whether a statement is "opinion" or "fact" depends on four factors: "(1) whether the specific language in issue has a precise, readily understood meaning or whether it is indefinite and ambiguous; (2) whether the statement is capable of being objectively characterized as true or false; (3) an examination of the full context of the communication in which the statement appears; and (4) a consideration of the broader social context or setting surrounding the communication, including the existence of any applicable customs or conventions which might signal to readers or listeners that what is being read or heard is likely to be opinion, not fact." See Kirch v. Liberty Media Corp., 449 F.3d 388, 402 (internal citations omitted), citing Steinhilber v. Alphonse, 501 N.E.2d 550, 554 (N.Y. 1986).[19]

Here, Chubb argues that their statements that Vinas was "too small" and "no good" were subjective, cannot be proven "true" or "false," and are thus non-actionable statements of opinion. See Shernoff v. Soden, 2006 U.S. Dist. LEXIS 70410, at *8 (N.D.N.Y. 2006) (collecting cases), citing, e.g., Steinhilber v. Alphonse, 501 N.E.2d 550, 554 (statements calling union member "scab" are statements of opinion); Parks v. Steinbrenner, 131 A.D.2d 60, 64-65 (N.Y. App. Div. 1987) (statements calling baseball

---

[18] Chubb argues, and Plaintiff does not challenge, that Vinas cannot state a claim based on the first allegedly defamatory statement in September 2005, because the one-year statute of limitations has expired. See N.Y. C.P.L.R. § 215(3).

[19] The "opinion/fact" inquiry is a question of law for the court. Celle v. Filipino Reporter Enters., 209 F.3d 163, 178 (2d Cir. 2000).

10

umpire "not capable" and accusing him of "misjudg[ing] plays" are opinion).  Vinas provides several arguments in response, none of which are particularly persuasive.

First, Vinas argues that the "fact" that its accounting work was "good" can be proven "true" or "false," as it prepared and audited financial statements in compliance with objective accounting standards.  This argument is unavailing.  By analogy, a baseball umpire must perform in compliance with objective umpiring standards (i.e., to correctly enforce the rules of the game), yet to call an umpire "not capable" is non-actionable opinion, not fact.  See generally Parks v. Steinbrenner, 131 A.D.2d 60, 64-65.

Secondly, Vinas argues that Chubb's statements implied that Chubb knew certain undisclosed facts, and thus are actionable statements of "mixed opinion."  See Steinhilber v. Alphonse, 501 N.E.2d 550, 553.  Yet it is unclear what facts, exactly, Chubb would have known to support their assertion that Vinas was "too small" or "no good" that its audience (i.e. Angeliades, Vinas' client) did not know itself.  Indeed, it is uncontested that Vinas' accounting company was in fact small, as it employed no more than three people.

Lastly, Vinas argues for "defamation by implication" – that the real but implied import of Chubb's statement that Vinas was "no good" was that Vinas was "too close" to Angeliades, and further impliedly, was "cooking [Angeliades'] books," and that a reasonable surety bond broker would reach that inference as well.  See November v. Time, Inc., 13 N.Y.2d 175, 178-79 (N.Y. 1963) ("The words are to be construed… as they would be read and understood by the public to which they are addressed.")  However, the levels of attenuation within Chubb's purported "implication" cast doubt on the "reasonable" inferences Vinas argues should be drawn from Chubb's statements.  (Notably, Plaintiff does not allege that Chubb said that Vinas was "too close" – he alleges that Chubb said Vinas was "no good," which supposedly implies Vinas was "too close," which supposedly implies Vinas was "cooking the books.")

Moreover, for such "defamation by implication" claims, Plaintiffs typically have to show that Defendants affirmatively intended such implication.  See Rappaport v. VV Publishing Corp., 618 N.Y.S.2d 746 (N.Y. Sup. Ct. 1994) ("The language must… affirmatively suggest that the author intends or endorses the inference.").  Vinas alleges no facts that suggest that Chubb affirmatively intended to imply that Vinas was

11

unethically or illegally "cooking the books" – only that Vinas was, as Chubb apparently stated, either "too small" or "no good."

Because Chubb's allegedly defamatory statements are non-actionable opinion, rather than fact, Chubb's motion to dismiss Vinas' defamation claim is granted.

## IV.   CONCLUSION

For the foregoing reasons, Chubb's motion to dismiss Vinas' tortious interference with contract claim is DENIED.  Chubb's motion to dismiss Vinas' claim for tortious interference with prospective business advantage is GRANTED.  Chubb's motion to dismiss Vinas' defamation claim is GRANTED.

The Clerk of the Court is directed to close this motion and remove it from my docket.

**SO ORDERED.**
**June [  ], 2006**
**New York, New York**

_____
U.S.D.J.

12